Case No. 22-1163, et al. Hospital Menonita de Guayama, Inc. Petitioner v. National Labor Relations Board. Mr. Muldoney for the petitioner, Ms. Beard for the respondent. Good morning, Your Honor. Mr. Muldowney? Muldowney, yes, Your Honor. Good morning. Please proceed. Thank you, Your Honor. If it please the Court, Patrick Muldowney on behalf of the petitioner, Hospital Menonita. This case involves the application of the successor bar under the National Labor Relations Act. In this case, the board applied the most recent iteration of the successor bar adopted in the UGL Unico case, which purported to make what was previously a rebuttable presumption of union majority status irrebuttable during a successorship issue. Relying on that case, the board concluded that the petitioner had unlawfully withdrew recognition from the union. We recite the factual background in our brief, but just briefly, the petitioner acquired a hospital in… We know the basic facts, so can I just ask on that? Sure. The textual hook for your argument is Section 7 of the Act, which says basically that employees have a right to associate or dissociate with union through elections, right? Right. I mean, just in ordinary meaning, you wouldn't think of that right as being burdened or infringed or violated if the scheme provided for periodic but not continuous elections. No one thinks that the public's right to select our president is burdened because we only do it once every four years. Correct. Before I answer your question and discuss this with you, I did reserve three minutes for rebuttal. I will. But in this situation, this is the very case that really, I would argue, looks to assert the rebuttable presumption, that the rebuttable presumption is correct. Because when you look at the situation here, the employees had been represented by a union for a number of years before the petitioner acquired the hospital. And during that time, at least four years prior to the acquisition of the hospital, the employees had not received the contract. They had not received the contract. There had been no contract negotiated, including for two particular units of the five units that were there that had been initially recognized in 2012. They never got an agreement. You mean an agreement was never negotiated by their representative. You're stating in a very self-serving way, but that's not what goes on. Parties sometimes break down in negotiations, but the employees are still represented. And benefits are still paid, and they can't be implemented unilaterally when the union is there. The negotiation process is still there, and in effect, the fact that the parties are still struggling over executing a particular contract doesn't mean the employees are not represented. They are. But what happened with respect to the petitioner, the petitioner came into this situation and eventually received a petition signed by the majority of each of the five units of employees saying, we do not want to be represented by the union because they had been in this situation where the union had been ineffective. The whole idea of the successorship bar or the successorship presumption is the idea that the successor comes into the relationship and is then assuming the predecessor's relationship with the union. In this situation, there was no relationship. There was a relationship, but it wasn't as you thought it might exist because it wasn't an executed agreement. There was a relationship. That's why the rule is what it is. The presumption is there is a relationship. The presumption is you have an obligation to bargain for a reasonable period of time. It's not a long period. It's a reasonable period of time. And the only difference old and new is whether it's rebuttable or not. And the board explained it in the prior case as to why they take this approach. It's a perfectly reasonable approach. Certainly not one we ought to second guess. They've explained it. It's for a short, reasonable period of time. They said in this situation, the union, the employer, your client failed to follow the rule. Your Honor, what we take exception with the board on is that the irrebuttable nature of it basically makes these employees who may not want to continue to be represented. Well, in six months, then it'll play out that way. It could be six months. If you read the record, your client was buying all that time anyway by being resistant to any overtures for bargaining and bargaining obligations. Six months is not a long period of time. There's an obligation to bargain for six months up to a year under the existing rule. It's not rebuttable. That's true. But the question is whether there is a rationale supporting the rule. It seems to me there is, and the board has explained it. We would submit that the rationale that the board submitted in the UGL case was basically that, gee, there had been a large increase in mergers and acquisitions. There's no tie of that to unionized employment places or any kind of indication that in the years since the rebuttable presumption had been resurrected after the back-and-forth, that there had been any increase in either de-cert petitions or ULP cases involving withdrawal of recognition. So while there's a general statement by the board, gee, this has happened, there's no connection of that to how it serves the purposes of the act. I don't think that's the main rationale. The main rationale of the board, as I remember what they said both in this case and in the original case setting the groundwork for this, is that you don't disturb employees' settled rights merely because a successor comes in without requiring the successor to at least bargain for a reasonable period of time, knowing that a union is there, a reasonable period of time. And then if it doesn't work out, that's a different issue. That's the rationale. I mean, there are other things that are said justifying it, but that's the main point. And as my colleague mentioned, that is consistent with protecting the rights of employees. And it's hardly burdensome on employers because it's not you must bargain forever. It's for a reasonable period of time because there's already a union here. And you bought the place knowing there was a union here. And based on the record, they were ready to negotiate with them. Well, then that's a different question. And the board's answer to you on that one, I suspect, is that substantial evidence supports their finding that they were not ready to bargain the way they were obliged to. I'm sorry. I'm sorry. The board is going to say the substantial evidence supports their finding that the employer was not ready to bargain as the law required. We would argue. That's a substantial evidence standard or review. And a considerable portion of that claim, in terms of the failure to bargain, comes out of post-withdrawal actions by the petitioner. And, again, based upon the information that the petitioner had received, that was objective from a majority of each of the units, as they withdrew recognition because under Section 7, Section 7 provides for the board, provides under the act, that employees have the right to engage in bargaining or the right to refrain from doing it in terms of collective bargaining. And what the irrebuttable presumption with all due respect to the board, what that creates is it translates the rights of employees under Section 7 into a union security law. And that's not what the act is supposed to be. I just don't see how that follows. You've got someone who comes in, buys an operation with a union, knowing that the rule is if you're a successor where there is a union under established law, you have to bargain in good faith for a reasonable period of time, six months to a year. Six months is an insignificant period of time. And that's what the board was essentially saying. It protects the rights because employees are now in flux because there's a new employer. And so the least that they're entitled to is good faith bargaining for a reasonable period of time. If it doesn't work out, it doesn't work out. Given the factual situation here, that you have at best a dysfunctional union relationship with their own members, the issue here in terms of whether they have to automatically recognize the union for six months to a year in the face of objective evidence, which the ALJ wouldn't look at because of the irrebuttable presumption. When you've got that, when you've got that issue there, the board should have to at least consider that issue before finding that there was an unfair labor practice by not negotiating with the union after they had received the objective evidence of the objective evidence of failure of desire not to be represented by that union. Can you give us any sense outside the successorship context? Just in the ordinary course, how often is a recognized union challenged through one of these various mechanisms? In terms of the majority status? Yeah. I mean, it is not a common occurrence. It is not. It's not a common occurrence. I mean, all I can give you is sort of my anecdotal experience. Yeah, just sort of ballpark, right? I mean, it doesn't typically happen every few months. Right. It is not a standard part of my practice, nor has it ever been. And I think most labor attorneys on national side would agree with that. So if that's true, then there's a lot of force to Judge Edwards' point that six months to a year is not a huge infringement on the employees' Section 7 rights. Well, I would say the opposite. I would say that because it doesn't happen very often, it really shows that the employees themselves have an issue. And that in terms of their representation by the union and their Section 7 rights should be paramount. And by requiring them to continue to be in the successor position after they've been represented by this union already over the course of four or five or more years, it is unfair to the employee. Did they file a de-cert petition before the successor came in? I don't have that information. Well, I mean, isn't that relevant? Then obviously the employees were not so distressed that before the successor came in, they were filing a de-cert to get out of the existing relationship. They weren't that dysfunctional apparently. So, I mean, they're in the same situation they were in before the successor came in. They were in a bargaining relationship. If they wanted to get out of it, they could at the appropriate time file a de-certification petition. They hadn't done that. So, all that happened was a new owner came in and the new owner had the same obligation as the old owner, to bargain in good faith. And it's limited because it is a successor and the board has said, no, you don't have to bargain in good faith forever. We're not going to assume there's a majority support for you forever. You have to do it for a reasonable period of time. And if it doesn't work, then you can fly the coop. But, Your Honor, again, what they may have done prior to the sale? The fact of the matter is when the petitioner came in, they ultimately were confronted with this evidence that they were given. And given that evidence, we would argue that the Section 7 rights should be paramount. Well, that's because you want a different rule. You want to be able to say there's a rebuttable presumption, which really makes the situation dysfunctional. If you understand what goes on when employees, the union, pro-union, anti-union are now fighting about whether or not anyone represents them. And that may go on for a lot longer than the six months to a year before you ever get that resolved. So, I mean, what the board is saying, look, all things considered, yes, it's employees' rights that have to be protected. We're not disturbing those rights because they already had a union and they hadn't done anything to get rid of the union. The only thing that's happened is there's a new employer. And we're saying to new employers, you're on notice. You got a bargain for six months to a year, reasonably. And then if it doesn't work out, then it's a different situation. And I also think we need to look at the timing of these petitions because if they were happening at the same time the new employer was handing out cash payments and other things. Right. I'm not so sure that those petitions to get rid of the union are a little tainted by that. Right. The issue about, I take it, Your Honor, you're talking about the hurricane bonus, the $150. Well, all the goodies that were suddenly coming. Right. Because the employer was doing, I mean, years and years and years ago, I used to do this. I mean, I know the situation. And employers are doing everything they can to try and win this battle. That is not to have a union when this is all over. And so it's a little here and a little there. And what the board rule says is, no, we're going to have a little repose during a period of time when you have to bargain in good faith. And if it doesn't work out, that's another issue. But what's interesting, Your Honor, though, is that the board previously had the rebuttable. I understand. And they went back and forth. No, as well as I do. You may not be as old as I am, but you're old enough to know. The board changes substantive policy determinations all the time. I understand. In my lifetime, they've probably done it, what, 20,000 times. And we have said it's their job. They can take into account circumstances as they see them. Point well taken, Your Honor. But I would suggest that you're as old as I am. I may be after this hearing. I don't know. Your Honor, I would just take one issue with respect to the rebuttable versus irrebuttable presumption. When the board went back on the irrebuttable presumption, the only rationale was this mergers and acquisitions argument, which did not connect in any way to labor. They said, oh, there's a lot of mergers and acquisitions. And looking at the Lilly Transportation case that the First Circuit had ruled, had dealt with, Justice Souter said he kind of tried to fill in what he called the laconic exercise of the board in terms of providing a rationale for why they were changing it. But his was basically a workload. He said, well, there's going to be a lot of cases coming in. What's wrong with Justice Souter's core reasoning? Which is you can't extract from the words of Section 7 a bright line rule about when elections have to happen or not. Ten years, clearly too much. Two weeks, clearly OK. And so the board is exercising discretion in balancing the degree of intrusion onto the Section 7 interest with a lot of other competing interests about stability and such. And that question is just, we just review their balancing as a matter under the arbitrary and capricious standard. And that's all we do. Well, I would argue that there's a lot of what you mentioned sort of procedural in nature in terms of timing of elections and things like that. This is substantive. And we would argue because it's dealing with it's dealing with our view, depriving the employees of their Section 7 rights because they have expressed their desire not to be in the union. I don't know if it's procedural or substantive. The point is, there's no judicially discernible timeline when elections have to happen. We can't stare at the text and say, oh, it has to be every four years or every two years or every one year. In terms of talking about changing majorities. Right. Correct. But again, whether it's every two years, four years, et cetera. What we had in this case is we received those petitions at the time we received them. So whether it's whenever the time frame for taking elect doing an election, we are we were confronted with expressions by the by the employees that they no longer wish to be represented by that union. And wanted to deal with Tishner. Correct. I mean, you want to keep trying to talk about the facts of your case. I'm not sure they're helpful to you, but I'm just asking you about the bright line rule. I mean, generally, agencies can just draw a rule, draw lines and say, like, you know, we'll mandate a reconsideration every two years just to make sure, or we'll prohibit a reconsideration within a year of an election because the union needs some time to do its thing. OK, now that you're talking about the certification bar and that one, we're not. You know, there's a that's a new relationship where the union is just coming in. This is a this is a relationship that's been existing for some time. So the concerns in the situation, the the the the policy issues behind the certification bar don't apply here. And again, we're not arguing there shouldn't be a rule. What we're arguing is that there needs to be possibility that that rule should not be as bright line in these kinds of circumstances, because you have you have people coming into different in working environment and different in terms of the between the relationship. They've established a rule. You're advocating. What rule are you advocating? Going back to the going back to the rebuttable presumption. Right. So they can never they can't establish a bar for a month. That if there's if there is a if there's evidence, sufficient evidence that would justify removing the bar, they should be able to consider. Judge Henderson, any other questions? I don't have a question, but I would like the record to reflect that Judge Edwards is not that old. I am right behind him. Thank you. Thank you, Judge. And I'm right behind both of you. Thank you. Thank you. We're from the board is Beard. Yes. Good morning. Heather Beard from the Labor Board. As the board said, and as your honors were discussing. The facts here in this case. Provide support and make it crystal clear why the protection of a successor bar is reasonable for the board to have as a rule. And appropriately balances the rights of employees under section seven and the interest in stability and collective bargaining relationships, which itself is a precept for employee rights. And I believe there are a few points I'd like to address first that my opponent made, if I may. The first one is in regards to the fact that they received this petition from the employees that many times. The law has been clear since 2011, which is any such petition received from employees during this reasonable period of time, which is at least six months is something that cannot be considered by the employer. So it isn't like we have a case here where the employer didn't know what the law was. Number two, this situation where my friend on the other side is saying that the hospital came in and knows now that the employees had a dysfunctional relationship because they didn't have a bargaining agreement. As Judge Edwards said is simply don't know that from the record is absolutely not necessarily true. What we do know is that the employees had voted for and had a union in all five units and collective bargaining agreements in three that had expired, whose terms and conditions of employment were the ones that we know. Let's just take a step back from the facts and just talk about the successor bar. So what is it about the change in ownership that moves the needle one way or the other on the question whether the employees support their union? Sure. Well, because it's totally different from the most conventional bar, which is triggered by certification or a contract bar. That's another one. Well, actually, a question about that. The contract bar, does that apply in cases where the employees don't ratify the contract or only in cases when they do? Well, if the employees don't ratify the contract, then my understanding is the contract doesn't apply because it would have to be a employees have to have to ratify a contract that the union is. So I think I can find any. So if that's how it works, then the contract bar and the certification bar are triggered by events that affirmatively indicate support by the employees of the union. When the when the union is certified, the law, as it is the board law, is that the union is the collective bargaining exclusive of employee for one year. Conclusive makes perfect sense because they've just the board has just made that determination. And that's in the statute. Okay. But when the owners change, what does that have to do with whether the employees support the union? A lot to do with it because they're the bargaining partner on the other side of the union in the condition terms and conditions of employment. This case was one of them where the employer who's new comes in and decides that as they can, they don't have to accept any collective bargaining agreement that's there, but they have to bargain. And in this case, what they also did is they changed the terms and conditions of employment that all the employees were used to working under when they had their union. And under the terms of the three bargaining units who had the collective bargaining agreements that were in place that had expired, but whose terms would have been the same. So, when you have a new bargaining partner coming in a new bargaining partner, especially here that changed the terms and conditions of they can unilaterally change. Yes, says that if there were no successorship status quo ante, the employer could not unilaterally change. Correct. That's black letter board law. No unilateral changes when they're in terms of conditions of employment without discussing. Okay. Yes. So, in this particular case, that is why the board, when considering when a new employer comes in, and this was goes back to fall river dying when a new employer comes in. That's one of the most destabilizing situations you can have because this new employer is new. And so here, and in other cases, when a new employer comes in, what the board was doing is saying, what's the best way? And the board is the expert agency doing this that can balance the rights of the employees. And in order to keep I mean, it's throughout Supreme Court and other case law that in order for there to be stability during a collective bargaining relationship, there has to be some amount of time that it's set to to continue as you all were talking about the presidential election various elections. It's not new to have some limited period of time where there isn't an election. And the key here is the board did not find for ten years. You can't decertify or file a petition for certification. Simply six months from the six months seems to me clearly reasonable for reasons. Judge Edwards suggests. I agree. But but I'm a little concerned with. I think the dissent made this point. The the interaction between the successor bar and the contract bar. So you imagine the contract bar gives the union three years of protection before successorship. Then the successor bar attaches, gives them another year within which they execute another contract, which would have given them three more years. That's seven. The board said, oh, seven sounds long. We'll make it six. Six or seven is really long. That's a huge burden on employee rights to choose their union. I would respectfully disagree with that. I would say that when the board did go, wasn't it wasn't insignificant when the board considered exactly, as you said, how there might be a possibility of a length of bars like that. However, if there was a contract bar following the employer bargaining with the union and coming up with a contract. And I think that the way that they did decide that even though that is speculative, that they were shortening the amount of time from three years to two years is pretty significant in the board. Looking at the facts and some of the counter arguments and coming up with what was reasonable and certainly has not been. I would point out my opponent has not challenged that. I can't. I can't remember. Did they reserve the possibility of an as applied challenge in under section seven in a scenario like that? Because you're right. The three, three, one, two won't always arise, but it might. That's not an open question or no. I guess I'm sorry. I don't understand your question. The board board has a general board approved a general rule of a year, six months or a year, which could latch on to the three years in pre succession, two years post success. OK, you have that perfect storm of restricting employee rights. OK, what happens in that specific case? Right. So, first of all, I respectfully disagree that that's restricting employee rights. I got it. OK. But beyond that, I would say, no, the board is saying should that happen, that would be OK under its successor bar, that there would be the three. Right. So that sounds so you have a rule that in some applications seems pretty modest in others. Just for the sake of argument, just assume is pretty draconian. So, well, it could be it could be. I mean, the thing that we're also not putting in that calculus of speculation, respectfully, is the fact that if the employer comes in and didn't do here and bargains, which is its obligation that six months goes by pretty quickly. If it bargains, you know, in this particular instance, we don't have that as applied challenge that you're talking about. I mean, not only was that not raised by my opponent, it's something that in this instance is we're sort of in the very, very easy case where you have an employer that comes in and is substantial evidence supports on this record, does not fulfill its bargaining obligation with the union. You then have you know, you would have to to see that this was a case where, as the board said, and, you know, why, you know, the board gave one of its extraordinary remedies here, which is it said, look, this bargaining relationship did not have any chance. So here, what you had is the employees rights and the equation, really, the facts here are pretty good for you. I'm worried about how the rule might apply. Right. Let me let me make sure we're on the same page. The using this situation union comes in, they have an obligation to bargain. I mean, the employer has an obligation to bargain six months or so and they bargain in good faith. They reach no agreement. What are the rights of the employees? And they reach no agreement. No agreement. Right. OK. So under the successor bar, they bargained. Six months has gone by. Right. The general counsel, then, in order to claim there's any sort of unfair labor practice with regard to the. Just answer my question. What are the employees rights in that situation? No agreement is reached. No. It was good faith bargaining. And there's it. And there's an impasse that employees ostensibly. Yes, the employees could file a decertification. I mean, we're walking around. One obvious answer to the express concern by counsel on the other side. The employees are not locked in. The period is minimal. They don't reach an agreement and they can't reach an agreement if the employees don't agree. So if the employees hate this union, they're not going to buy anything. The union does. And at the end of the six month period, say, no, we're not ratifying anything you put on the table and we're going to file a desert petition. Right. Yes. OK. So, I mean, that's the answer to the other side. Just be honest. Do what the law requires, because it may be protecting employees interest. And if it doesn't work out, the employees interest will now come to the fore because they're going to say we're going to get out of this. Get out from under this union. I mean, that's that's exactly right. No contract bar or any other bar that prevents employees from walking away after six months. As long as that was a reasonable period. Right. As long as that was reasonably a period of time. Absolutely. So the the board's balancing here that it did is incredibly common for what the board does and why it is considered the expert on labor law. I do want to speak to the mergers and acquisitions point that my opponent raised in terms of like that's the only reason this is happening. I would agree in back reading UGL Unico. That was one consideration where the majority made the point, which I think is an excellent one. The fact that there are mergers and acquisitions that are taking place at a faster and faster pace simply demonstrates it's really important to get this right. It's really important. Back in UGL Unico, they were changing what the law was and explaining why they were doing it and why they thought rebuttable presumption wasn't adequate. And now we've had that law. We're not up here justifying the board changing a rule. Recently, we're up here talking about a rule that the board has had in place after it had made a policy decision to change it back. And I had already justified. Yes. Prior case. And in the current case, it was simply saying our prior justification is the same one we'd offer here. It wasn't just mergers and acquisitions are the reason we're not going to flip again. The mergers and acquisition had come up in the prior case. That's that's correct. And so in this focused on was stability. Again, I said, look, this is about stability for the employees. It's a destabilizing period. It's a very short period of time to make sure they have a chance to bargain in a potentially destabilizing period. And if it doesn't work out, it doesn't work out. Absolutely. I agree, Judge Edwards. And as Judge Henderson was saying as well, I mean, we can see how this is could sort of be a destabilizing period where we're not sure what's going to happen or how the employees really feel when the employer came in. And the new employer did make a bunch of unilateral changes that were could be considered favorable to the employees. So this sort of is a poster child for a reasonable application of the successor bar and further. Further buttresses the reasoning in UGL Unico that the board did in terms of why this is the policy choice that the board thinks best fulfills the rights of all the parties involved. Can I ask a question about Burns? Sure. So the second holding of Burns, which is that the successor is not bound to accept. Agreement of the predecessor court says. The alternative position of compelled acceptance would cause. And then it has this reductio and part of the reductio is the court says among these problems, the successor will be would be bound to observe the contract despite good faith doubts about the union's majority during the time. Right. The contract bar. So it seems like, you know, what Burns views as a reductio is what the board now views as great policy. I would say it's a very different thing to talk about binding a new employer to a contract that it has not signed versus saying to a new employer coming in who knows it's buying a company that has a union there. You're going to have to at least talk to these people. You're going to have to bargain. I take that point, except the court seemed to link the two. In Burns, though, I think they were talking about having the employer bound to the contract and nothing in Burns says that a period of time with a conclusive presumption like the one the board has adopted is in any way unlawful. And in fact, I think Burns does focus on the problem with making an employer adopt the contract, which this successor bar rule doesn't do, doesn't doesn't get involved in the reductio at all, I would say. No, it doesn't. It's not happening. Correct. That's not the situation. Right. Nor is it something that even if it wasn't this factual situation broadly, generally for Judge Katz, this is a question for policy. No, there's nothing about, as Justice, former Associate Justice Souter said in Lilly, there's nothing about Burns or Fall River dying for that matter in any way that conflicts with what the board sees. I see my time has expired. Judge Henderson, anything else? No questions. Okay, thank you very much. Thank you. Give you 2 minutes. Thank you. Just a couple of points to address with respect to my, my colleague here. First of all, I just want to make sure it's clear that I thought there was some confusion in the in the prior public week success. Obviously, a successor employer's responsibility is to bargain with the union. It's not to come to it's not to agree to the contract and make sure that's clear that that confusion. We know. Okay. Okay. I did sound like confusion. Okay. But I would, I would indicate, though, your honor, that in those cases are good faith. But that bargain in good faith, that's the obligation. We agree on that to your honor. We agree on good bargaining and good faith. But your honor, we would argue that when you look at falls river in particular falls river, while that while that was the day reference, the existing test at that time, which was the rebuttable presumption. And they talked about when they were dealing with successorship issues, and they did not criticize it. Now, again, it wasn't necessarily right before them. But one would expect that there would have been at least something if they had a concern with it that they would have raised about that issue. Also, with respect to the, in the burns case, justice white didn't make a comment with respect to success, the successorship issues in front of him that these cases needed to be decided on on a case by case basis. We would argue that this is a similar situation when there is evidence to suggest that that the bar should not be applied. The board should be able to have should have to consider it that that's part of their responsibility as an agency that's adjudicating the rights of employees to to adjudicate issues that come up that may be an exception to the general rule. And and again, that was sort of where the that's where the board was before the most recent change in in in the most recent change in the law. And then also, I would just indicate for again, the, the timeline here is that the petitioner acquired the hospital in September. The changes, the withdrawals of recognition were in February. So, we're talking when we're talking pretty close to six months as it is. And so, to the extent that they want that the board wants to create a bright line rule there, the bright line rule, I think, sort of bright line rule, I think, betrays the idea that there are facts that exceptions that would prove that there should be there should be consideration of of an exception to the rule. And then lastly, I would argue against my colleague's point that there is no connection. The board never connected the never connected the mergers and acquisitions to any kind of stability issue with respect to labor relations. They just indicated that there's been a lot of a lot of mergers and acquisitions, but they, but there's no connections. Anderson, any questions? No. Okay, thank you. Thank you. Submitted.
judges: Henderson, Katsas, Edwards